[No. 1233.   Decided June 27, 1894.]

J. M. BUCKLEY, *Appellant*, v. THE CITY OF TACOMA *et al.*,
*Respondents.*

[No. 1234.   Decided June 27, 1894.]

ROBERT WINGATE *et al.*, *Appellants*, v. THE CITY OF
TACOMA *et al.*, *Respondents.*

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — STRICT PER-
FORMANCE OF CHARTER PROVISIONS — ILLEGAL PROCEEDINGS —
RATIFICATION — LIABILITY OF CITY.

Although the charter of the city of Tacoma provides in § 52 that
the city shall have power "by ordinance and not otherwise" to pro-
vide for making local improvements, yet such improvements may
be ordered by resolution of the city council, as the specific pro-
visions of the charter on the subject of street improvements, con-
tained in article 12, provide for that method, and must be held as
governing the general provisions of § 52.

A resolution by the city council of the city of Tacoma declaring
its intention to improve a certain street within prescribed limits by
grading and sidewalking, is not sufficient, under the requirements
of § 135 of the Tacoma charter, to authorize the improvement of
such street at the cost of abutting owners.

The failure to file a diagram of a proposed street improvement
in the office of the board of public works, as required by § 136 of the
Tacoma charter, renders the proceedings for such improvement
defective and illegal.

The notice of a proposed street improvement, published by direc-
tion of the board of public works, under the provisions of the char-
ter of the city of Tacoma, should set forth the exact character of
the improvement, the cost thereof, and a description of the property
to be affected thereby.

The passage of an ordinance ordering a public improvement,
after the work has been done, is ineffectual as a ratification of an
improvement which has been illegally ordered, and completed
without compliance with charter provisions.

Where street improvements are made by a city without com-
pliance with the plain provisions of the charter, which are condi-
tions precedent to the exercise of the power, the city cannot
reimburse itself for its outlay by assessing the property benefited.

*Appeal from Superior Court, Pierce County.*

*Doolittle & Fogg* (*Charles O. Bates*, of counsel), and *S. C. Milligan*, for appellants:

Grants of power to make local assessments are strictly construed and must be strictly followed. *Keese v. City of Denver*, 10 Col. 112; *Merritt v. Port Chester*, 71 N. Y. 309; *Allen v. City of Galveston*, 51 Tex. 302; *City of Pueblo v. Robinson*, 12 Col. 599; *Reed v. Erie*, 79 Pa. St. 346; *Chicago v. Rock Island R. R.*, 20 Ill. 290; *City of Delphi v. Evans*, 36 Ind. 90; *City of Chariton v. Holiday*, 60 Iowa, 391; *Roche v. City of Dubuque*, 42 Iowa, 252; *Barron v. Krebs*, 41 Kan. 338; *City of Covington v. Casey*, 3 Bush, 698; *Hydes v. Joyes*, 4 Bush, 464; *Hewes v. Reis*, 40 Cal. 263; *Dehail v. Morford*, 30 Pac. 593; *City of Washington v. Pratt*, 8 Wheat. 681.

Every material requirement of the charter must be strictly complied with before there can be any liability of adjoining lot owners for such work. *Keese v. Denver*, 10 Col. 112; *Zottman v. San Francisco*, 20 Cal 97; *Massing v. Ames*, 37 Wis. 645; *Pound v. Chippewa Co.*, 43 Wis. 63; *City of Columbus v. Storey*, 35 Ind. 97; *Covington v. Casey*, 3 Bush, 698; *Kyle v. Malin*, 8 Ind. 34; *Mills v. City of Detroit*, 54 N. W. 897; *Butler v. City of Detroit*, 5 N. W. 1078; 2 Dill. Mun. Corp., § 800.

We maintain that the notice to be given by the board of public works is one of the acts whereby the city government acquires jurisdiction to levy and collect a special assessment; under the authorities this must be strictly followed. *Dehail v. Morford*, 30 Pac. 593; *Village of Hyde Park v. Carton*, 23 N. E. 590; *Gage v. City of Chicago*, 32 N. E. 264; *Remsen v. Wheeler*, 105 N. Y. 573; *Northern Pacific Terminal Co. v. Portland*, 13 Pac. 705; *Kansas City, etc., R. R. Co. v. Campbell*, 62 Mo. 585; *Fravert v. Finfrock*, 1 N. E. 875; *Dick v. Wilson*, 10 Or.

490; *Wright v. Edwards*, 10 Or. 298; *Van Sant v. Portland*, 6 Or. 395, *Ladd v. Spencer*, 31 Pac. 474; *Hewes v. Reis*, 40 Cal. 255.

Estimates, surveys and diagrams must precede the collection of assessments when required by statute. Omission results in nullity. *Goring v. McTaggart*, 92 Ind. 200.

Proceedings for the levy of an assessment, being without jurisdiction, are absolutely void, and the property holder is not estopped to deny their validity by the fact that he made no objection while the improvement was in progress. *Starr v. City of Burlington*, 45 Iowa, 87; *Patterson v. Baumer*, 43 Iowa, 477; *Keese v. Denver*, 10 Col. 112; *City of Chicago v. Wright*, 32 Ill. 192; *In re Sharp*, 56 N. Y. 256; *Wilson v. Poole*, 33 Ind. 444; *Hager v. City of Burlington*, 42 Iowa, 661; *Coggeshall v. City of DesMoines*, 78 Iowa, 241; *Marshall v. City of Leavenworth*, 44 Kan. 464.

*F. H. Murray*, and *S. A. Crandall*, for respondents.

The opinion of the court was delivered by

STILES, J.—The enabling act for cities of the first class (Gen. Stat., § 520) provides that any such city framing a charter for its own government shall have power:

(Subd. 10.) "To provide for making local improvements and to levy and collect special assessments on property benefited thereby, and for paying for the same or any portion thereof."

(Subd. 13.) "To determine what work shall be done or improvement made at the expense, in whole or in part, of the owners of the adjoining, contiguous, or proximate property, or others specially benefited thereby, and to provide for the manner of making and collecting assessments therefor."

Sec. 52 of the charter of Tacoma begins thus: "The city government of Tacoma shall have powers, *by ordinance and not otherwise*," repeating the language of the

statute, with the exception of the last clause of subdivision 13, for which there is substituted: "*Provided*, The manner of making and collecting assessments therefor shall be as prescribed in this charter."

But when the reader of the charter gets to article 12, which is a complete code of street improvement and assessment law, he finds that not an ordinance, but a resolution, is required. Appellants make a strong point of this, and insist that anything less than an ordinance renders the whole proceedings leading up to a street assessment void. But the learned judge who heard the case below held that the specific provisions of the article mentioned must govern the general ones of § 52, and we quite agree with his conclusion. Although the enabling act conferred the power, it did not undertake to say how it should be exercised. Very often such powers are made effective through general ordinances, but here the charter framers, and thereby the city *en masse*, have seen fit to prescribe even a more solemn and formal law on the subject by providing for a charter system which is rigidly binding upon both the legislative and executive powers of the corporation.

We do not see how any substantial injury can be done, either, through this construction, and it remains merely to examine the record to see how the mandates of the charter have been carried out.

The charter provides for the establishment of a board of public works, with a clerk, and specifically delegates to it many executive duties, and the appointment of sundry officers, among whom is a city engineer who is required to make all necessary surveys of public work under the direction of the board.

Article 12, so far as is necessary for the consideration of this case, reads as follows:

"SEC. 135. All applications for establishing or changing the grade of any street or streets, the improvement of pub-

lic grounds or buildings, the laying out, establishing, vacating, closing, straightening, widening or improvement of any street, road or highway, or the laying out or opening of any new street through public or private property, and for all public improvements which involve the necessity of taking private property for public use, or where any part of the cost or expense thereof is to be assessed upon private property, shall be made to said board, and such work or improvement shall not be ordered or authorized until after said board shall have reported to the city council upon said application. But before any work or improvements as above contemplated shall be commenced, the city council, when recommended by the board of public works, shall pass a resolution ordering that said work be done: *Provided*, That all applications for the purpose of changing the grade, or of making any improvements upon any street, avenue or alley, within the city shall be signed by at least three resident freeholders, owners of property abutting upon said street, avenue or alley: *Provided, however*, That the city council may, without petition or recommendation, have power to order the improvement of any street, avenue or alley, or any part thereof, by a two-thirds vote of all members of the city council.

"SEC. 136. Upon the adoption or passage of any resolution by the city council for the improvement of any street, avenue or alley, the board of public works shall cause a survey, diagram and estimate of the entire cost thereof, to be made by the city engineer; said diagram and estimate shall be filed in the office of the board of public works for the inspection of all parties interested therein. The clerk of said board shall forthwith cause a notice of such filing to be published daily for ten days in the official newspaper; such notice shall contain a copy of the said resolution passed by the city council, and must specify the street, highway, avenue or alley, or part thereof, proposed to be improved, and the kind of improvement proposed to be made, together with the estimated cost and expense thereof, and also a general description sufficient for identification of the property to be charged with the expenses of making such improvements, and that if sufficient remonstrance be not made before the expiration of ten days after

the date of the last publication, said improvement will be made at the expense of the owners of the lots and parcels of land described in said notice as hereinafter provided; but if within ten days after the final publication of said notice the persons owning one-half or more of the lots or parcels of land to be taxed for said improvements shall file with the clerk of the board of public works a remonstrance against said improvement, grade or alteration, the same shall not be made at the expense of the owners of the lots so described, unless the city council, by a two-thirds vote of all the members thereof, order said improvement made notwithstanding such remonstrance.

"SEC. 137. If no remonstrance be made and filed as provided in the last preceding section, then owners of the lots and parcels of land described in said notice shall be deemed to have consented to such improvement; or if such remonstrance has been made and filed, and the city council has ordered such work to be done or improvement to be made, the expense thereof shall be charged to the property described in said notice in the manner as hereinafter provided, and the board of public works shall, at its earliest convenience, and within six months thereafter, establish the proposed grade or make the proposed improvement: *Provided*, That no improvement shall be made when the estimated cost thereof shall exceed 50 per cent. of the assessed value of the property to be assessed.

"SEC. 138. Such cost and expenses of making said improvement shall be assessed upon the adjoining, contiguous or proximate lots or parcels of land described in said notice."

Without petition the council passed this resolution, by unanimous vote:

"Resolved by the city council of the city of Tacoma, that said city council hereby declares its intention to improve 'N' street in Buckley's addition from Steele street to Pine street at the expense of the abutting owners. Grading and sidewalking. To be done by day labor."

The board of public works, in due course, published a notice as follows:

"Notice is hereby given that the following is a true copy of a resolution of intention passed by the city council February 27, 1892, to wit: 'Resolved by the city council of the city of Tacoma, that said city council hereby declares its intention to improve "N" street in Buckley's addition from Steele street to Pine street at the expense of the owners of the lots and parcels of land affected by said improvement, according to the city charter.  Said improvement to consist of grading to an established grade and building sidewalks on both sides thereof.  And the city engineer is hereby ordered to make a survey, diagram and estimate of the said improvement and file the same in the office of the board of public works.'

"That the survey, diagram and estimate of the cost of said improvement were filed in the office of the board of public works March 7, 1892, by the city engineer, and the estimated cost thereof is $1,850."

The filing of a diagram and estimate consisted in the engineer's writing, in an estimate book kept in the office of the board, the following:

"N street in Buckley's addition.

| | cut | fill | curb |
|---|---|---|---|
| Steele to Prospect | 78 | 1,055 | 810 |
| Prospect to White | " 539 | " 157 | " 270 |
| White to Oak | "1,453 | " ...... | " ...... |
| Oak to Race | " 575 | " 46 | " 29 |
| Race to B'd'y | " 92 | " 317 | " 290 |
| Totals | "2737 | " 1,575 | " 1,309 |

   2,136 lineal feet of 7' walk.
    80 " " " aprons.
   344 " " 6 Xings.
   2,136 " " gutters.
   424 " " drain box.
1,800 feet frontage.
Estimate March 7, 1892, $1,850."

No remonstrance of the owners of half or more of the lots to be assessed for the improvement was filed, and the board, without further order from the council, proceeded to make the improvement, completing it June 4, 1892, at a cost of $1,885.94.

August 6, following, the council passed an ordinance (No. 688) entitled:

"An ordinance providing for the improvement of 'N' street from Steele street to Pine street, creating a fund and providing for payment by assessment upon the adjoining, contiguous and proximate lots or parcels of land under the provisions of the city charter now in force."

The body of this ordinance being as follows:

"Be it ordained by the city of Tacoma:

"SECTION 1. That 'N' street in the city of Tacoma be improved from Steele street to Pine street according to the plans and specifications of the city engineer on file in the office of the board of public works.

"SEC. 2. That a fund be and is hereby created and an assessment be levied and collected upon the adjoining, contiguous or proximate lots and parcels of land as provided by the city charter now in force, to defray the cost and expense of said improvement according to the provisions of the city charter, which assessment shall be a lien upon the property liable therefor.

"SEC. 3. The board of public works is hereby authorized and directed forthwith to enter upon and complete said improvement by day labor, and to proceed in the premises as provided in the city charter.   .   .   ."

In these cases the appellants sought to enjoin the collection of the assessments levied upon lots owned by them, but the relief was refused.

Four things plainly appear from the record thus set out, viz.:

1. No resolution was passed *ordering* any improvement made on N street.

2. The engineer did not file a diagram in the office of the board.

3. Neither the board nor its clerk published a notice containing a copy of the resolution that was passed.

4. The notice contained no description of the property to be charged.

But the respondents' position is that this does not matter, as something was done which was, in each particular, intended to comply with the mandatory provisions of the charter.

The question is, when did the city obtain jurisdiction to make this improvement and charge abutting property with the expense? Obviously so far as these cases go, it was when such proceedings had been taken by the city as that the owners of the property to be charged had had the notice prescribed by the charter, and were bound to remonstrate or be estopped. To bring matters to such a point in a case where the proceeding is without petition, the council must have ordered the improvement, the engineer must have filed a diagram and estimate, and the clerk of the board must have published the notice.

1. The resolution. The initiative step is the resolution which orders the improvement to be made. No such order can be intelligible which does not reasonably describe the kind of improvement intended, not, as counsel for respondent suggests would follow, with such particularity as would be necessary in the making of a contract for the work, but with such fullness of description as would enable an engineer who had no previous familiarity with the matter to make his diagram and estimate after survey of the street. Allowing that the verbless phrase used in the resolution before us means that it is the intention of the council to improve the street by grading it and constructing sidewalking, the query at once suggests itself: What is to be the extent of the grade, and what kind of sidewalk is proposed? There may or may not have been an established grade on N street, and if there were such a grade, it may or may not have been the intention to conform to it in making this improvement. There is an infinite variety of sidewalks— wood, iron, stone, brick, concrete—of more forms than there are materials, some cheap and some expensive, but

all sidewalks. How could the engineer make an estimate of the cost, or the board construct the work, without substantial directions in these particulars? The answer comes promptly with the suggestion: Either they could not proceed at all, or they must proceed according to their own ideas. In this instance they took the latter course, but without any authority, since it lies with the council alone to prescribe the method of making all such improvements. Something is suggested in argument as to there being general ordinances of the city governing the improvement of streets, which served as a guide to the engineer and board of public works. There is nothing of this in the record; and if there were such ordinances they should have been referred to in the resolution in such a way as that parties interested would know where to look for a description of the kind of improvement intended. Streets are not, and usually cannot be, made after one pattern, like the interchangeable parts of a machine. One way of making an improvement may be substantially as good as another, and may serve the purpose just as well, although the difference in cost may mean an easy payment by the owner in one case and substantial ruin in another. It is not to be supposed that the council would overlook such considerations, but that it would endeavor, while prosecuting a reasonable improvement, to lighten the burden of expense as much as possible, in each particular case, without regard to any fixed, inflexible rule of procedure. To accomplish this it must know the circumstances surrounding the proposed work, and with this knowledge it can easily prescribe the general features of the improvement. To do otherwise is to cut off from property owners all knowledge of what they will be expected to answer for, and to deprive them of the opportunity to remonstrate in sufficient numbers, if they see fit. But the worst of such a loose system is that it leaves to mere executive officers the exercise of a large

discretion which the charter does not confer upon them. In other cases, which are also before us, the evil of such a system appears clearly exemplified. But perhaps the greatest defect of this resolution is, that while it declares the intention of the council to improve N street, it does not *order* anything, and furnishes no basis for any action on the part of the engineer and board of public works. Counsel for the respondents endeavors to excuse the method of procedure by resolution of intention, by saying that the council had merely followed a habit acquired under the charter of 1886, § 144. But under that charter the council itself controlled the work; the determination of the character of the work was equally necessary; and no such work could be done at all at the expense of the property except upon petition of the resident owners of more than one-half of it. But be that as it may, the present charter had been in operation a year and a half when these proceedings commenced, and the "habit" under the old charter cannot be accepted as an amendment to the new one.

The resolution of intention should have defined the improvement intended, and directed the board of public works to proceed with its execution as defined, after notice, and upon the failure of property owners to present a sufficient remonstrance.

2. The diagram and estimate. The charter prescribes that a diagram and estimate shall be filed after a survey by the engineer. So far as the property owner is concerned with the estimate, the gross estimate of the cost and the total amount of frontage would seem to be about all he is interested in, since the charter method of payment is according to the front foot, and he can be charged for nothing in excess of the estimate. These two items, therefore, would enable him to calculate his probable expense. But the diagram, if it serves any purpose at all to the owner, must be intended to show him how the improvement, when

completed, will probably affect his property, so that he can
intelligently determine whether he will remonstrate or not.
It may be of the very highest importance to him to know
whether he is to be left on the brink of a cliff or at the
foot of a trestle; whether the assessment he will be called
upon to pay will be his total expense, or whether this will
be but the beginning of a large outlay necessary to protect
his front or restore it to a safe, convenient and decent con-
dition.    Perhaps in the case of a new and uninhabited
street these would not be very important matters practi-
cally, but it is to be remembered that this charter prescribes
·a universal rule for all cases of street changes and improve-
ments, and that the precedent laid down as the rule for a
lot-booming street out in the woods makes the same rule
that will be applied should the grade of the most impor-
tant street in the city be raised or lowered.

There was no attempt to comply with the charter in the
matter of a diagram in this instance, and therefore one of
the purposes of giving a notice was rendered futile.

3. The notice.    By the notice published, the owners of
property abutting upon N street from Steele to Pine, were
given to suppose that the council had passed a resolution
which was never before that body.    The framer of the
notice appears to have been apprehensive that the resolu-
tion as passed was defective in some particulars, and there-
fore he changed it, and added to it matter enough to more
than double its actual length.    The publication of a copy
of the resolution in the notice is intended to bring home to
the property owner information that the council has acted
in a matter of interest to him, and to let him know pre-
cisely what it has done and proposes to do.    This copy to
be published means a literal copy according to the usual
way in which the word is used, and not the construction
which the clerk of the board of public works may put
upon the meaning of the resolution.    However, in justice

to the clerk in this instance, it ought, perhaps, to be said that he had nothing whatever to do with the publication, which was made by the individual members of the board, thus adding one more item to the list of charter infractions. The notice is by the charter required to specify the kind of improvement proposed to be made, and to contain a general description sufficient for identification of the property to be charged. The first of these requirements would be met by the copy of the resolution if that document contained any sufficient specification; the second gives rise to further consideration. The resolution, in this case, declares the intention to be to improve "at the expense of the abutting owners;" the notice improves upon the original by the phrase, "at the expense of the owners of the lots and parcels of land affected by said improvement according to the city charter." Neither is a correct statement, critically considered, for the expense is not charged upon the owners, but is assessed to land without regard to ownership. But this a matter of small consequence. The respondents' reply is that § 138 of the charter makes it obligatory upon the city to levy the assessment in a certain way, each lineal foot of frontage along the line of the improvement paying its proportion of the total cost; so that every person owning property along a street, knowing the law, must know that when that street is to be improved his property will necessarily be included in the assessment. The argument is well enough as far as it goes. But what is it worth in the face of the charter direction? According to this theory when the charter required the notice to specify the street, or part thereof, proposed to be improved, it should have stopped, because the owner could well enough reason out the necessary conclusion as to the liability of his property. It went on, however, and specifically required the property to be charged to be described in a way sufficient for identification, and more than this,

the very first clause of § 138 is in these words: "Such cost and expenses of making said improvement shall be assessed upon the adjoining, contiguous or proximate lots or parcels of lands *described in said notice*, in the following manner;" thus emphasizing what seems to us to have been the clear intention, viz., that each owner should have laid under his eyes specific information that his property was to be assessed, without any resort on his part to argument or conclusion. And this case furnishes an excellent illustration of the value of such a requirement, for where lots lie endwise to a street they are to be assessed their full share of the cost according to frontage; but where they lie lengthwise half of the cost is to be assessed to the first lot, and the other half to other lots in the rear to the center of the block. Now it happens that N street runs through blocks in all of which the lots lie lengthwise along it, and there are sixteen lots in each tier, so that one lot must pay half the expense assessed on a hundred feet frontage, and seven lots pay the other half. Could the holder of a deed to lot 27 in block 7, which is the sixth lot from the street, without a familiarity with the lot and block system of Buckley's addition, which is not to be presumed, know whether his lot would be within the assessment district, unless he hunted up the plat? Had he not, under the express language of the charter, a right to expect to see, in a notice of the improvement of N street, his lot specifically named, or at least "lots 25 to 32, inclusive, in block 7," which would have been a sufficient description in this instance, even for a deed? If he did not, then of what use is the minute particularity of this charter in the matter of street improvements? If the city's officials can override these plain, mandatory provisions in the many particulars already pointed out, and improve streets *ad libitum*, and the property owner be bound on theories of substantial compliance, estoppel, waiver, benefits, or

failure to tender fair value, we fail to see. any sensible reason for such provisions in a charter. But the people who pay for streets made the charter, and while they granted to the public authorities most liberal powers, by permitting the arbitrary improvement of streets, at local expense, they emphatically reserved to themselves the right to have three things distinctly brought to their knowledge, viz.: (1) What improvement it is proposed to make. (2) What the cost is to be. (3) What property is to be charged with the expense. This knowledge they declared must be afforded in a certain way, and after that they reserved the right to remonstrate, and to have a two-thirds vote of the council to overcome their objections.

It is unnecessary to cite authorities on these points. The A B C of the laws of municipal corporations, that the power to levy special assessments is to be construed strictly, that the mode prescribed is the measure of power, and that material requirements must be complied with before there is any liability, is all that need be quoted. *Spokane Falls v. Browne*, 3 Wash. 84 (27 Pac. 1077). An assessment made contrary to these principles is void, and injunction lies to restrain its collection. Dill., Mun. Corp., §§ 803–4; High, Injunctions, § 539.

4. It only remains to determine whether ordinance No. 688 had any effect to validate the assessment. That it did not must be apparent at a glance. The work had been done beyond recall, and no remonstrance of property owners could have any possible effect. That it gravely ordered the board of public works to proceed with an improvement which had been completed two months before, only made its weakness the more apparent. Why it should have been passed, unless through a consciousness on the part of the council that what had been done in the matter was wholly without force to render an assessment valid, it is hard to guess. "Before any work or improvement

. . . shall be commenced, the city council . . . shall pass a resolution ordering said work to be done,'' is the language of the charter, and, if anything, its most mandatory provision. That any such proceeding is unavailing as a ratification, see *Newman v. Emporia*, 32 Kan. 456 (4 Pac. 815).

We regret to disagree with the learned judge who passed upon these cases in the superior court, and who prepared a careful and extended opinion which has been presented to us by counsel. But either the point was not pressed, or the opinion fails to observe, that the objections raised by the appellants go to the jurisdiction of the city to make the improvement at all at the expense of abutting property, by reason of a complete failure to carry out the plain provisions of the charter which were conditions precedent to the exercise of the power. Under these circumstances there is no greater legal or equitable right in the city to be reimbursed its outlay than there is in a trespasser upon land who makes valuable improvements and is dispossessed by an ejectment suit. It has done what it did in its own wrong, without previously qualifying itself to have reimbursement; and to now declare that because the law upholds local assessments on the theory of benefits, a city which omits the steps necessary to bring it under the operation of that law shall have the same right to enforce its assessments as one which takes those steps would be to deprive the property owner of that which the charter in distinct terms gives him, viz., a right to be heard upon the question of the advisability of the improvement before it is undertaken. There may be cases in which such circumstances exist as should estop an owner from objecting to an assessment in any event, but we do not find them in these cases.

The judgments are reversed, and the causes remanded

for the entry of judgments in accordance with the prayer of the complaints.

DUNBAR, C. J., and ANDERS and SCOTT, JJ., concur.