R. F. CONWAY

*v.*

THE GARDEN CITY PAVING AND POST COMPANY.

*Opinion filed April 18, 1901.*

1. APPEALS AND ERRORS—*Supreme Court will examine stipulated facts to see if law was properly applied.* Where the record contains stipulated facts only, the Supreme Court will examine the stipulation to see whether there was a proper application of rules of law.

2. SAME—*effect where there is no dispute as to the facts.* Where there is no dispute as to the facts, the only question is as to their legal effect and whether the law was properly applied.

3. SAME—*when legal effect of stipulated facts is properly preserved as a question of law.* In a case tried without a jury, if the stipulated facts present only the ultimate facts involved, the only duty of the trial court is to apply the law, and the question whether the agreed facts create a legal liability is properly preserved for review on appeal, as a question of law, by a motion to find the issues for the defendant, to the denial of which motion an exception is preserved.

4. CONTRACTS—*when contract is illegal as tending to restrict competition.* If the lowest bids on a public contract are the same and the bidders are all responsible, a contract made between them by which one bidder agrees to pay the others a certain sum for the public contract is void, as tending to stifle competition, there being no difference, in principle, between hiring a party not to bid and hiring him to withdraw his bid.

5. SAME—*test of illegality of a contract tending to restrict competition.* The test of the illegality of a contract tending to restrict competition among bidders is not the motive or result in a particular case, but the tendency of the contract if recognized as valid in law.

*Conway* v. *Garden City Paving and Post Co.* 90 Ill. App. 104, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. C. G. NEELEY, Judge, presiding.

E. S. CUMMINGS, for appellant.

COX, HELDMAN & SHORTLE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an action of assumpsit, begun in the circuit court of Cook county by appellee, against appellant, upon a written agreement to pay $1000 for a contract with the city of Chicago, said sum to be equally divided between appellee and A. J. McBean & Co., competing bidders against appellant, when the contract should be awarded to appellant. To the declaration, which set out said agreement in substantially the same manner in four counts, the defendant filed the plea of the general issue. A jury was waived and the cause was submitted to the court upon an agreed state of facts stipulated in writing by the parties. The court found the issues for plaintiff and entered judgment. The Branch Appellate Court for the First District affirmed the judgment and granted a certificate of importance.

The parties having submitted to the court the facts as agreed upon in their stipulation, the defendant moved the court, upon a consideration of such facts, to find the issues for him. The court overruled the motion and defendant excepted. The facts as so agreed upon and upon which the judgment of the court was asked, briefly stated, are as follows: The three parties, plaintiff, defendant and A. J. McBean & Co., were competing contractors in the city of Chicago, and at a public letting of a contract by said city for improving Laughton street, they, with other contractors, were bidders. Said three parties, independently and without fraud or collusion, submitted bids to make said improvement for the same sum of money, and they were the lowest bidders and were all responsible bidders. After the opening of bids, plaintiff, defendant and A. J. McBean & Co. retired to a private room and agreed that each should submit a written proposition agreeing to pay to each of the other two a certain sum of money to secure said contract, and whichever one would

give the most should have it. The following written propositions were thereupon submitted:

"$1000.00.                    CHICAGO, *April 7, 1893.*

"I hereby agree to pay one thousand dollars for the contract on Laughton street, the amount to be equally divided between Garden City Paving and Post Co. and A. J. McBean & Co. when contract is awarded to me and signed.

R. F. CONWAY."

"CHICAGO, *April 8, 1893.*

"We will pay to A. J. McBean & Co. and R. F. Conway the sum of ($200.00) two hundred dollars for Laughton street, said amount to be divided equally between them when the contract is awarded and signed.

GARDEN CITY PAVING AND POST CO.
Per JAMES G. MCBEAN."

"CHICAGO, *4/8, 1893.*

"We will pay to the Garden City Paving and Post Co. and R. F. Conway the sum of four hundred and ṇo/100 ($400.00) dollars for Laughton street, said amount to be equally divided between them when the contract is awarded and signed.

·A. J. MCBEAN & Co."

The defendant having offered to pay the highest sum to secure the contract, his offer was accepted, and in reliance upon it the other parties went with him to the city of Chicago and announced that the contract might be awarded to the defendant. The city then awarded the contract to the defendant, who accepted and performed it and received the proceeds and gain accruing therefrom. The contract was a valuable one to the defendant, and he paid A. J. McBean & Co. $500, as he agreed. The city of Chicago knew nothing of the agreement between the bidders, and it was its custom to permit tie bidders to settle among themselves who should receive the contract.

It is contended by counsel for appellee that there is no question of law presented by the record for us to consider, and that the proper way for the defendant to have raised a question of law would have been to demur to the evidence or move to exclude the evidence. It is argued

that the motion to find for the defendant included both questions of fact and law, and was a request to the court to find the facts in controversy for the defendant, and that we cannot know what the court held on questions of law. The parties, by agreement, submitted their controversy to the court, and in such a case the court is ordinarily called upon to do two things: First, decide, from the evidence, the ultimate facts on which the rights of the parties depend; and second, apply the law to such facts, resulting in a judgment which the law pronounces upon the facts. There may be cases where parties stipulate as to the evidence or the existence of facts which tend to prove the ultimate fact, from which the court must draw an inference as to such ultimate fact. In this case it was not the evidential facts which were agreed upon, but the stipulation stated the ultimate facts. The court was not authorized by the stipulation to draw any inference of fact, or to come to any conclusion as to the existence or non-existence of some ultimate fact which the evidence tended to prove. It was a case stated for the court, and there were no facts to be balanced or considered. The stipulation did not differ materially from a special verdict finding and stating all the facts and referring the law to the decision of the court. It is very clear that the only understanding of the parties was that the court was to apply the law to the facts as agreed, and that the motion of defendant was for a finding and judgment in his favor upon the law as applied to such facts. We can see no reason for a motion to exclude the evidence where the parties themselves have presented the ultimate facts to the court for its judgment by applying the law to them.

Where a case is tried before a jury, we have approved different ways of raising the question whether the evidence, as a matter of law, is sufficient to support the cause of action. These methods are: Demurring to the evidence, moving to exclude it, or asking an instruction

to find for the defendant. (*Cothran* v. *Ellis*, 125 Ill. 496.)
The usual practice is to present an instruction directing
a verdict, and it has never been held necessary to either
formally demur to the evidence or to enter a motion to
exclude it.  We have said that in a trial before the court
it is proper to raise the question here raised by a de-
murrer to the evidence, a proposition to be held or a mo-
tion to find for the party. (*Smith* v. *Billings*, 169 Ill. 294.)
Where there is no dispute as to the facts, the only ques-
tion is as to their legal effect and whether the law is
properly applied. (*Launtz* v. *People*, 113 Ill. 137.)  Where
the record contains stipulated facts merely, we will ex-
amine the stipulation to see whether there was a proper
application of rules of law that warranted the judgment.
(*People* v. *Huffman*, 182 Ill. 390.)  There was no controversy
in this case between the parties except the one of law,
what judgment should be entered upon the agreed facts,
and the motion of the defendant was addressed to that
question.  Defendant excepted to the overruling of his
motion and the finding and judgment against him, and
thereby preserved the question whether the agreed facts
created any liability in the law.

The agreed facts are, that the bids of the three parties
to the arrangement were the same and that all said par-
ties were responsible bidders, so that the bids were ab-
solutely equal in all respects.   There was no reason for
accepting one in preference to the other, but each of the
parties was willing to take the contract for less than the
amount bid.   Defendant was willing to take it for $1000
less than his bid to the city, and that $1000 he agreed to
pay to his competitors to let him have it.  The public
is interested in free competition in bidding, and the de-
sign of the statute is that contracts shall be let to the
lowest responsible bidder, so that the public shall have
the benefit of the lowest price obtainable from a respon-
sible party.  As the three bids and bidders were equal,
the presumption is that the city would have re-adver-

tised and received the benefit of the amount defendant promised to give to his competitors to get the contract. The plain and only motive of the arrangement was to put an end to existing competition between these three parties for a contract which, it is agreed, was a valuable and profitable one. Defendant was willing to pay $1000 to secure the contract and to have his competitors with-draw their bids, or, what amounted to the same thing, ask the city to disregard them and award the contract to him. There is no difference, in principle, between hir-ing a party not to bid and hiring him to withdraw his bid and allow the other party to have the contract. Any arrangement of that kind which is designed to suppress bidding and competition in the letting 'of public con-tracts is against public policy and renders the agree-ment illegal and void. Contracts not distinguishable in principle from this one have frequently been held void, and private arrangements amongst rival bidders for sti-fling competition are not enforced by the courts. (*Hanna* v. *Fife*, 27 Mich. 172; *Weld* v. *Lancaster*, 56 Me. 453; *Boyle* v. *Adams*, 50 Minn. 255; *Gibbs* v. *Smith*, 115 Mass. 592; *Swan* v. *Chorpenning*, 20 Cal. 182.

It is insisted in this case that the public received no actual injury by reason of this arrangement, because these three parties were the lowest bidders for the work. Unquestionably, a further bidding would have lowered the price of the work; but whether it would or not, the test of illegality is not the result in a particular case, but the tendency of the contract if recognized as valid in the law. If such contracts could be allowed and enforced it would give facilities to enter into secret arrangements for awarding a contract to one of the rival bidders for a public work. It is immaterial what the parties say as to actual fraud in the transaction, but the law pronounces a contract of this character illegal and void from its tendency, whatever the view of the parties as to its be-ing fraudulent or wrong. The arrangement amounted to

nothing but buying off the plaintiff and A. J. McBean & Co. for a money consideration. The court should have applied to the agreed facts the rule of law that such a contract is illegal and void, and the refusal to do so was error.

The judgments of the Appellate Court and the circuit court of Cook county are reversed and the cause is remanded to the circuit court.  *Reversed and remanded.*