[No. 9312. Department One. March 27, 1911.]

HALLIDIE MACHINERY COMPANY, *Plaintiff and Appellant*, v. WHIDBEY ISLAND SAND & GRAVEL COMPANY, *Defendant and Appellant*.[1]

SALES—PRICE—INSTALLMENTS DUE—DEFENSES—DEFECTS. Installments due on the purchase price of hoisting machinery to be installed and guaranteed by the seller cannot be withheld on account of minor defects, where the contract plainly indicates that the parties had in mind possible defects to be cured after the plant was completed.

REPLEVIN—VALUE OF PROPERTY—MEASURE OF DAMAGES. In an action to recover machinery or its value, sold under a conditional bill of sale, where there was evidence that it was worth its price, if it had been up to specifications, but that defendant had been damaged by defects and delay in installing it, the proper measure of its value to the plaintiff is the balance due on the contract price, less proper credits to the buyer.

[1]Reported in 114 Pac. 457.

Cross-appeals from a judgment of the superior court for Whatcom county, Kellogg and Hardin, JJ., entered June 28, 1910, upon findings favorable to the plaintiff, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Hughes, McMicken, Dovell & Ramsey*, for plaintiff.

*Craven & Greene*, for defendant.

PARKER, J.—This action was commenced in the superior court by the plaintiff to recover possession from the defendant of a certain gravel hoisting plant, which was delivered by the plaintiff to the defendant under a conditional sale contract entered into between them on September 28, 1908. This contract was partly printed and partly typewritten, and was in the form of a proposal made by the plaintiff to the defendant and accepted by the latter. The proposal was made upon what appears to be a general printed form, which will account for the peculiarity of its language when comparing the printed portions with the typewritten portions. Its terms, so far as necessary for us to notice them, are as follows:

"The company guarantees the apparatus specified herein to be of full working capacity as rated, and agrees to correct any defects in same which develop under normal and proper use within thirty (30) days from the starting thereof, provided the purchaser gives the company immediate written notice of such defects. . . .

"The company to furnish: 1 No. 14 Flory 8¼ x 10—30 HP hoist with boiler and swinging gear attachment, 1 set of derrick irons, complete with swinging wheel, 1 ¾ yard type 'E' Hayward clamshell bucket, 200 ft. of plow steel cable for bucket, 200 ft. of plow steel cable for return of bucket, 50 ft. more or less, main guy of derrick boom, necessary wire rope clips. 120 feet T rail. Necessary castors for derrick carriage, necessary bolts to fasten machinery in place.

"The company agrees to furnish labor for the installation of the above machinery in place on top of the present bunkers at Bellingham, Washington, and deliver to purchasers the machinery in working order.

"Purchaser is to deliver, free of expense to the company, the lumber necessary to build the derrick carriage boom, mast stiff legs for the derrick, also any additional lumber necessary for housing, and furnish power necessary to place all of above machinery and lumber on top of the bunkers, when required by the company, free of cost to the company.

"The company guarantees the capacity of the machinery equal to thirty (30) yards of gravel per hour when not delayed by any conditions whatsoever that might arise from unfavorable positions of material to be moved beyond the limit of the machinery.

"Price: Three thousand and sixty dollars ($3,060) $600 cash at time of signing contract; $1,400 cash at completion of the erection of the machinery as specified. Balance in three notes payable in two, four and six months respectively from date of completion of erection of machinery as specified, with seven per cent (7%) interest.

"If all apparatus should not be forwarded on same date, *pro rata* payments shall be made for partial shipments. ·

"If completion of erection of all apparatus shall not be made on same date, *pro rata* payments shall also be made during the progress of erection.

"If completion of work or any material part thereof is delayed more than thirty (30) days from any causes for which the company is not responsible, full payment is to be made within three (3) months from date of first shipping receipt, for all apparatus furnished and work completed.

"The title of apparatus herein sold shall not pass from the company until all payments hereinunder (including deferred payments, if any), shall have been fully made in cash, it being agreed that in case a default be made in the payments to be made hereunder, or in any part thereof, according to the terms herein set out, then it shall be optional for the company, or its successors or assigns, to consider the whole amount thereof due under this agreement, no matter how evidenced, as immediately due and payable, although the time of maturity has not yet arrived, and immediately to enter into and upon the premises wheresoever said property may be, and take possession thereof, and thereafter hold the same free and absolutely as if this contract had not been made, and said purchaser expressly waives notice of the right to the exercise of the option above given and said purchaser also waives prior

notice or demand and waives any action for damages or trespass which might arise by the company taking possession of said property in the manner hereinabove provided for.

"It is further expressly agreed that should it be necessary for said company to retake said property at any time before the final payments herein provided for shall have been made, or on account of any breach of the covenants herein contained, that any money or moneys which might have been theretofore paid by said purchaser to said company in part payment for said apparatus shall be presumed to be the amount of damage sustained by a breach of this agreement, which, from the nature of the same, it would be impracticable or extremely difficult to fix the actual damage, and that any sum so received shall be construed to be held by and belong to said company, as and for the actual damages sustained by said company.

"Time is of the essence of this contract.

"The apparatus above specified shall be shipped as follows, or as near as may be:  Delivery in about two weeks from receipt of order.

"The above shipping dates are made in good faith, based upon promises of manufacturers.  The company agrees to use every reasonable effort to see that apparatus is shipped on time, but is not responsible for delays in shipment or arrival of apparatus above specified not directly manufactured by the company.

"The appartus herein mentioned shall be delivered f. o. b. cars bunkers site at Bellingham, Wash."

The issues may be briefly stated as follows:  The plaintiff alleges, in substance, that it has furnished the apparatus according to the contract; that the defendant has defaulted in making payment therefor as provided in the contract, excepting the first payment of $600; that the plantiff has made demand for payment according to the terms of the contract, which demand was refused, that the plaintiff has elected to retake the property because of such default in payment, and has demanded possession thereof, which was refused, and that the property is of the value of $2,500.  The usual judgment is prayed for accordingly, in the alternative.

The defendant denies that the apparatus has been furnished by the plaintiff according to the contract, and pleads

three separate counterclaims aggregating approximately $6,000, for which he demands an affirmative judgment against the plaintiff. The first counterclaim is based upon expenses incurred by the defendant in its business, which are alleged to be the result of delay on the part of the plaintiff in furnishing and completing the apparatus. The second counterclaim is based upon the payment of certain bills paid by the defendant in connection with the erection of the apparatus, at the request of the plaintiff. The third counterclaim is based upon damages claimed to have resulted to the defendant from the plaintiff's furnishing a certain defective pump, under a contract with the plaintiff. This counterclaim is based upon a separate contract from that sued upon by the plaintiff. By agreement of counsel, the cause proceeded to trial before Judges Hardin and Kellogg sitting together without a jury. The trial resulted in findings and a judgment in the plaintiff's favor for the possession of the property, and in the alternative, if delivery of the property cannot be had, for the value thereof, which value the court finds to be $1,639.45. The court also awarded the defendant, upon the first counterclaim, $354.60, and upon the second counterclaim $141.25, and directed judgment to be entered therefor in favor of the defendant and against the plaintiff in the event the delivery of the property be had. Otherwise such allowances are to be regarded as credits upon the purchase price, which, with other credits, reduce the value of the apparatus, to the plaintiff, to $1,639.45. From this disposition of the cause, both parties have appealed.

The facts, as found by the trial court, are, in substance, as follows: About two weeks after September 28, 1908, the date of making the contract, the plaintiff delivered at the bunker site of the defendant at Bellingham all of the apparatus specified in the contract, except the clam shell bucket. This bucket was not manufactured by the plaintiff, but was manufactured by Hayward & Company of New York City, and did not arrive at the place of business of the plaintiff in Seattle until

December 3, 1908, when it was immediately shipped to the defendant and installed in its plant on December 5, 1908. The plaintiff used every reasonable effort to have the bucket promptly delivered. The plaintiff commenced to install the machinery on or about October 9th, 1908, and on December 5, 1908, all of the machinery specified in the contract was installed. On December 29, 1908, the defendant notified the plaintiff that the swinging gear attachment would not work satisfactorily. On January 18, 1909, the plaintiff substituted other machinery for the swinging gear. On February 4, 1908, all of the machinery was installed, and the plant had a capacity of thirty yards per hour. All of the machinery and appliances were then installed in a thorough and workmanlike manner, except certain portions thereof enumerated in detail in the court's findings. These defective portions could then be cured so as to result in the whole plant being constructed in a thorough and workmanlike manner at a total cost of $324.70. On that day the plaintiff demanded payment of the purchase price from the defendant, which payment was refused. Whether or not this demand was for the entire unpaid portion of the purchase price or for the second payment of $1,400 is not very clear, but in any event neither was then paid. On the 11th day of February, 1909, the plaintiff elected to consider the whole of the balance of the purchase price due and demanded payment thereof, which was refused, and thereupon plaintiff demanded possession of the apparatus, which demand was also refused.

Between October 16, 1908, and January 18, 1909, the defendant engaged the services of a pile driver and of laborers for the purpose of unloading its scows and raising sand and gravel into its bunkers, which service was rendered necessary by the failure of the swinging gear attachment to work properly. The defendant necessarily expended for these services $354.60. This sum was allowed by the court upon the first counterclaim. There was paid by the defendant, at the

request of the plaintiff, $141.25 upon certain bills incurred in connection with the construction of the plant, which the court allowed upon the second counterclaim. The evidence was not sufficient to support the third counterclaim. The court evidently regarded the value of the apparatus as equal to the contract price of $3,060, provided it had been furnished in perfect condition; and for the purpose of determining the amount of the alternative money judgment to be rendered in favor of the plaintiff, fixed the value of the apparatus at $1,639.45, by deducting from the contract price the $600 paid thereon at the time of making the contract, the $324.70 necessary to expend in curing the defects in the plant, the $354.60 allowed upon the first counterclaim, and the $141.25 allowed upon the second counterclaim, treating all of these sums as credits upon the original purchase price.

It is contended by counsel for defendant that the contract was not sufficiently complied with to entitle the plaintiff to any payment upon the contract price after the first payment of $600. It may be conceded that the plant was somewhat defective at the time of making the first demand for payment, but we think the evidence warranted the court in finding that it was then capable of handling thirty yards of gravel per hour, and was sufficiently completed to entitle the plaintiff to payment of the second installment of $1,400. The terms of the contract plainly indicate that, at the time it was entered into, the parties had in mind possible defects to be cured after the plant was constructed. They evidently did not intend that the $1,400 installment should remain unpaid until the plant was free from all defects and in perfect working order. We are of the opinion that, under the terms of the contract, the plant was in such condition at the time of the first demand for payment that the plaintiff was then entitled to payment of the $1,400 installment upon the purchase price. The defendant failing to make such payment upon the first demand, the plaintiff was entitled to the possession of the property.

It is contended by counsel for the defendant that the court erred in not allowing any portion of the third counterclaim. Some question is made as to whether or not such a counter-claim would in any event be allowable in this case. Passing that question, we think that the court was fully warranted in refusing to allow this claim, upon the ground that there was not sufficient evidence to prove that the plaintiff sold to the defendant the pump claimed to be defective, and upon which alleged sale the counterclaim was based. The plaintiff was therefore not liable for such defect.

There is no contention made here as to the second counter-claim of $141.25, it being conceded that the defendant is en-titled to credit upon the purchase price of the plant in that sum.

A correct decision upon the first counterclaim, we think, depends almost wholly upon questions of fact. It is not an easy matter to measure the amount of the expenditures made by the defendant which were the result of the plaintiff's fault. We think these expenditures were, to some extent, the result of the plaintiff's unnecessary delay, and that, under all the circumstances, the amount allowed by the trial court was fair. It is possible, as argued by counsel for the plaintiff, that the court may not have determined the amount of this sum upon a correct theory, but we think the result is substantially correct. This question is involved in both appeals.

Counsel for the defendant contend that there was no evi-dence of the value of the machinery, and that the court did not correctly fix the value. There was evidence tending to show that the apparatus was of the same value as the contract price if it had been furnished strictly according to contract. The court evidently adopted that measure, as we think the evi-dence warranted. That being the actual value of the prop-erty, it was proper for the court to measure its value to the plaintiff, by reason of the nature of plaintiff's title thereto, by the amount of the balance due to the plaintiff upon the

contract price after allowing all proper credits. 34 Cyc. 1568.

The evidence is very voluminous, and the controversy much involved. A review of the nearly seven hundred pages of testimony convinces us that the disposition of the cause by the learned trial court was free from prejudicial error. The judgment is affirmed. Neither party will recover costs in this court.

DUNBAR, C. J., MOUNT, GOSE, and FULLERTON, JJ., concur.