[No. 11571.   Department One.   September 16, 1914.]

GREAT NORTHERN RAILWAY COMPANY *et al.*, *Appellants*, v. THE CITY OF LEAVENWORTH, *Respondent.*[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENT—ASSESSMENTS— VALIDITY—ENACTMENT OF GENERAL ORDINANCE. An assessment for a public improvement is not invalid for the reason that the proceedings therefor were initiated prior to the passage of a general ordinance covering the matter of local improvements, since 3 Rem. & Bal. Code, § 7892-1 *et seq.*, covering the subject of public improvements in cities and towns, though general and comprehensive in its terms, and directly conferring power upon the city council or legislative body to order improvements and any and all work to be done thereunder, and levy and collect assessments to pay the cost, does not prohibit a city from proceeding with an improvement without first passing a general ordinance, it appearing that each step in the proceedings prior to the passage of the general ordinance was directed by the city council, either by resolution or ordinance.

SAME—ENGINEER'S REPORT—DEFECTS—WAIVER—JURISDICTION. Defects in the report of a city engineer upon the initiation of an improvement, in that it failed to show the proportional amount of the cost to be borne by the property, and the lots benefited thereby, as provided by 3 Rem. & Bal. Code, § 7892-10 and the resolution initiating the improvement, are waived by failure to object thereto until hearing upon the assessment roll, and though some of the parties failed to appear in response to the notice and urge objections to the improvement, since the defects were not jurisdictional.

SAME — IMPROVEMENTS — CONTRACT — COMPETITIVE BIDS—USE OF PATENTED ARTICLE. An assessment for a street improvement is not invalid for the reason that the contract for the improvement involved the use of a patented article, as in violation of 3 Rem. & Bal. Code, § 7892-59, providing that contracts for local improvements shall be let upon competitive bids, where the owner of the patent furnished the city a license agreement in which it was agreed that the patented article would be furnished to the successful bidder, without reservation, which was done, and although the license agreement provided that it should apply only to contracts for 10,000 square yards or more, while the contract in question was but for 6,650 square yards, it appearing that the bidders relied on the license agreement when submitting their bids, and that no objection was raised to that provision of the contract until the filing of objections to confirmation of the assessment roll.

[1] Reported in 142 Pac. 1155.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered April 10, 1913, in favor of the defendant, confirming an assessment roll for a local improvement, tried to the court. Affirmed.

*Charles S. Albert, Thomas Balmer,* and *E. H. Fox,* for appellants.

*Louis J. Nelson* and *W. H. Pratt,* for respondent.

MAIN, J.—This is an appeal from a judgment of the superior court of Chelan county, confirming the assessment roll for a local improvement in the city of Leavenworth, in two cases which had been consolidated for the purpose of trial.

On April 23, 1912, the city council of the city of Leavenworth adopted a resolution declaring its intention to improve certain streets of the city by paving the same with Bitulithic pavement. The Bitulithic is a patented pavement, owned and controlled by the Warren Bros. Company, a corporation of Boston, Mass. The resolution of intention directed the city engineer to submit to the council, at its meeting on May 14, 1912, a statement of the estimated cost and expense of the improvement, together with the other data specified in Laws 1911, ch. 98, p. 444, § 10 (3 Rem. & Bal. Code, § 7892-10). The resolution also contained a notification to the property owners that the city council, at its meeting on the night of May 14, 1912, would consider remonstrances against the making of the improvement. Publication of the resolution was made as required by the statute. On May 11, 1912, the city engineer addressed a letter to the mayor and city council in which he said he was presenting plans and specifications for the improvement. This letter stated that the assessed valuation of the district amounted to $59,625; that the square area to be assessed was 382,340 square feet; that the approximate estimate of the cost of the improvement was about $19,258, or $2.50 per square yard; that to this amount $962 should be added for engineering and inspection expenses.

This report of the city engineer did not specify the amount of the cost to be borne by the improvement district. Neither did the diagram or print presented show the lots or parcels of land that would be specially benefited by the improvement, nor contain the estimated amount of the cost of such improvement to be borne by each lot. On May 14, 1912, that being the day fixed by the resolution, the Great Northern Railway Company, in writing, objected to the proposed improvement, upon the ground that the paving of the street was unnecessary and that the expense thereof was unwarranted. Objections in writing were also presented by other property owners. At an adjourned meeting of the council held on May 20, 1912, all the remonstrances were overruled. On May 28, 1912, an ordinance was passed providing for the improvement. This ordinance established a local improvement district and, among other things, provided that the cost and expense of the improvement should be borne by the property included in such district.

After the adoption of the specifications, a communication was received by the city council from the Warren Bros. Company, enclosing a Bitulithic mixture license agreement. This communication stated that it was desired by that company that the license agreement be set forth in the specifications, but if the city did not consider it best to so incorporate the entire agreement therein, gummed slips which were furnished by the company could be attached to the specifications, referring to the fact that the license agreement was on file. One of these gummed slips was, as requested by the company, attached to the specifications. By the license agreement, Warren Bros. Company agreed to furnish the Bitulithic pavement to any bidder to whom the contract might be awarded. The license agreement contained a provision that it apply only to contracts aggregating not less than 10,000 square yards. The amount of pavement to be laid, according to the ordinance, was 6,650 square yards.

On June 27, 1912, notice to contractors was published by
the city, and in response thereto, three bids were received, one
agreeing to lay the pavement for $2.35 per square yard,
another at $2.33 per square yard, and a third, submitted by
the Warren Construction Company, at $2.28 per square yard.
The bid of the Warren Construction Company was accepted,
and on July 17, 1912, this company was awarded the con-
tract for the improvement, by the city council.

The proceedings up to this point were taken by the city
without the passage of any general ordinance covering the
subject of local improvements at the expense of the property
to be benefited.  On September 10, 1912, the city passed a
general improvement ordinance.  Thereafter, and during
the month of November, 1912, the city engineer prepared
an assessment roll to cover the cost of the improvement, and
notice was published by the clerk that, on January 7, 1913,
the city council would consider the roll and objections made
thereto by property owners affected.  Prior to the date fixed
for the hearing, the appellants filed objections to the con-
firmation of the roll.  At the meeting of the city council on
the night of January 7, 1913, the objections were overruled,
and on the 21st, an ordinance was passed approving and con-
firming the roll.  In due time thereafter appeals were pros-
ecuted to the superior court.  The cause was tried in the su-
perior court on March 3, 1913, and resulted in a judgment
confirming the assessment roll.  From this judgment, the
present appeal is prosecuted.

This appeal presents three questions: First, was it neces-
sary for the city of Leavenworth to adopt a general ordi-
nance covering the subject of local improvements and assess-
ments therefor before initiating the proceeding for the im-
provement here involved; second, was the failure of the city
engineer to submit to the council, as required by the statute,
a statement of the proportionate amount of the cost of the
improvement which should be borne by the property within
the proposed assessment district, and a diagram or print

showing thereon the lots, tracts, and parcels of ground to be specially benefited thereby, and the estimated amount of the cost of the improvement to be borne by each lot, a jurisdictional defect rendering the assessment void; and third, was the contract for the improvement let upon competitive bids?

I.   The first question is, whether the city council had the power to initiate the improvement and proceed with the same up to the point of letting the contract therefor without first having passed a general ordinance covering the matter of local improvements.   At the legislative session for the year 1911 (Laws of 1911, ch. 98, p. 441; 3 Rem. & Bal. Code, § 7892-1 *et seq.*), a law was passed covering the subject of local improvements in cities and towns.   This act, while not covering all the steps necessary in the initiation and prosecution of a local improvement, is yet comprehensive in its terms.   By § 67 (3 Rem. & Bal. Code, § 7892-67), it is made to "apply to all incorporated cities and towns in this state, including unclassified cities and towns operating under special charters."   By § 71 (3 Rem. & Bal. Code, § 7892-71), it is provided that the "act shall supersede the provisions of the charter of any city of the first class" which may be inconsistent therewith.   It is also provided that all acts and parts of acts enumerated in the schedule, and all acts and parts of acts in conflict with the provisions of the act itself, are repealed.   Section 60 (3 Rem. & Bal. Code, § 7892-60), provides that, "The council of each city and town shall pass such general ordinance or ordinances as may be necessary to carry out the provisions of this act.   Thereafter all proceedings relating to local improvements shall be had and conducted in accordance with this act, and the ordinances of such city or town relating to local improvements."   In various sections of the act, the general ordinance which this section provides for is referred to; but nowhere is the city inhibited from proceeding with a local improvement without first having passed the general ordinance.   By § 6 of the act, the power is directly conferred upon the city council or

other legislative body to order a local improvement and any and all work to be done which shall be necessary to a completion thereof, and to levy and collect special assessments to pay the whole or any part of the costs.

In the present case, each step in the initiation and prosecution of the improvement, not covered by the act itself, was authorized by the action of the city council, either in the form of a resolution or a duly enacted ordinance. The act being general and comprehensive in its terms, and each step in the progress of the improvement prior to the passage of the general ordinance on September 10, 1912, being authorized by the city council, there seems to be no good reason for holding that the council had no power to proceed without first having passed the general ordinance. It is true that the act does not define the method by which the assessment shall be levied and collected, but before any assessment was levied or attempted to be collected in the present case, a general ordinance had been passed covering that detail, as well as others. Prior to the passage of this general ordinance, as already stated, each step in the proceeding was directed by the city council, either by resolution or ordinance. There is no claim of fraud, collusion or lack of sufficient notice. To now hold the assessment void because initiated prior to the passage of the general ordinance, would be to give to the act an unwarranted construction.

II.   This improvement was initiated by resolution. Section 10 (3 Rem. & Bal. Code, §7892-10), of the local improvement law specifies the data which the city engineer shall furnish the council when an improvement is thus initiated. The resolution of the council which directed the engineer to make a report covered the requirements of the statute. In responding thereto, the engineer's report contained the assessed valuation of the district, the total number of square feet therein, the approximate cost of the improvement, detail specifications covering the improvement, and a diagram or print showing the streets affected. This report was de-

fective as measured by the requirements of the resolution and § 10 of the statute, in that it failed to show the proportionate amount of the cost which should be borne by the property within the district, and the diagram or print failed to show the lots specially benefited thereby and the estimated amount of the cost of the improvement to be borne by each lot.

The argument is made that the report of the engineer required by the statute is jurisdictional, and because of the defects therein, the assessment is void. The question was raised for the first time upon objections to the confirmation of the assessment roll. The requirement that the engineer report to the council the matters which his report failed to cover is not a jurisdictional requirement in the absolute sense. That is, it is a requirement which might have been dispensed with by the legislature. The property owners who appeared and objected to the improvement being undertaken, did not point out any defect in, or urge any objection on account of, the report of the engineer. The question was raised for the first time in the form of an objection to the confirmation of the assessment roll. The defect in the engineer's report not being a jurisdictional matter, it was waived by the appellants, who appeared before the council in response to the notice and failed to offer any objection touching the report. This section of the statute was construed in *Chandler v. Puyallup*, 70 Wash. 632, 127 Pac. 293. In that case the notice required by the statute had not been published for the required length of time. Certain property owners appeared, however, in response to the notice, but failed to object thereto. It was held that the notice was not a jurisdictional requirement in the absolute sense, and that those appellants who actually appeared before the council in response to the notice had waived any objection thereto. It was there said:

"Nowhere in the evidence does it appear, nor do the appellants in their briefs claim, that the objection now urged was ever made before the city council or called to its attention. Having admittedly appeared in response to the de-

fective notice, it was incumbent upon them to show that they
then objected to the sufficiency of the notice.  Otherwise we
must treat that objection as waived, unless the failure to
publish the notice twice was jurisdictional in the absolute
sense that it could not be waived in any manner.  There is
much reason in the view that this notice has nothing to do
with the constitutionality of the law.  Its purpose was not to
accord a hearing upon the validity of the assessment or as
to the benefit therefrom to the property within the district,
but to accord a hearing as to the limits of the district and as
to whether the district should be formed at all.  The publi-
cation of the initial resolution or ordinance antedating as it
does any assessment, cannot affect the constitutional require-
ment as to due process of law one way or another.  The con-
stitutional requirement is met by the fact that the lien of
the assessment, if questioned, can only be asserted and the
property subjected to its payment by a suit in foreclosure.
Rem. & Bal. Code, § 7710.

"But even assuming that the constitutional inhibition nec-
essitates some notice of the initiation of the improvement,
the constitution does not prescribe any particular form of
notice.  In view of that fact, the legislature might have pro-
vided for but one publication of the initial resolution, or
might have provided for any other form of notice reasonably
calculated to apprise the property owners of the intended
improvement.  To proceed under an imperfect publication
was not to proceed without power.  It was merely an ir-
regular exercise of power.  The appellants who actually ap-
peared before the council in response to the notice, but failed
to offer any objection as to the sufficiency of the notice, must
be held to have waived that objection.  (Citing author-
ities.)."

The rule appears to be that, where a property owner makes
objection to the assessment proceeding upon certain spe-
cified grounds, he thereby waives other objections which are
not jurisdictional in the sense that they cannot be waived.
The rule as stated in Page & Jones on Taxation by Assess-
ment, vol. 2, § 1029, is:

"If the property owner makes objection to the assessment
proceedings upon certain specified grounds, such action is

not merely an omission on his part to object on other
grounds which he does not specify, but it also tends to mis-
lead the public authorities to believe that the grounds of ob-
jection thus urged are the only grounds upon which the
property owner complains of the assessment, and are the
ones upon which he intends to rely. Accordingly, the con-
duct of the property owner in filing certain specified objec-
tions is held to prevent him from subsequently relying upon
other and different objections to defeat the assessment."

Some of the appellants in this case it seems did not appear
before the city council in response to the notice and urge any
objection. Section 10 of the statute requires that the reso-
lution shall contain a provision notifying all persons who
may desire to object to the improvement to appear and pre-
sent such objections at a meeting of the council at the time
specified in the resolution. There is also a provision re-
quiring the publication of this resolution as notice to the
property owners that may be affected. It should be noted
that the objection to the sufficiency of the engineer's report
is one which could have been urged against proceeding with
the improvement. The property owners are given legal
notice to appear and present objections. Failing to appear
in response to the notice, it would seem that they would be
in no better position than those who appeared and did not
interpose any objection to the report of the engineer. In
Page & Jones on Taxation by Assessment, vol. 2, § 1027, it
is said:

"In many statutes provisions are found which point out
the method in which the property owner must object to de-
fects or irregularities in the proceedings. It is generally
held that if a fair and ample opportunity is given to the
property owner to be heard by virtue of such statutory pro-
vision, he must take his objections in the manner pointed out
by statute, and that if he does not object he cannot subse-
quently resist or attack the assessment for reasons which he
might have urged in the method provided for by statute.
. . . "

Had the property owners appeared and urged their objections in the initial state of the proceedings, the council would have been in a position to correct the defects. Having failed to appear, and having permitted the improvement to proceed, and not having urged the objections until they were urged to the confirmation of the assessment roll, it would seem only reasonable to hold that the objections as to the defective report of the engineer had been waived.

Our attention has been called to, and reliance is placed upon, the case of *Buckley v. Tacoma*, 9 Wash. 253, 37 Pac. 441, as sustaining the contention that the failure of the city engineer to report all the data required by the resolution and statute was a jurisdictional defect and rendered the assessment void. In that case the court was construing a charter provision of the city of Tacoma, which differs somewhat from the present statute. This charter required that, after a resolution had been passed by the city council ordering the improvement, a diagram and estimate should be filed in the office of the board of public works for the instruction of all persons interested therein. If persons owning a certain amount of the property to be affected did not object within a time specified, the board of public works should proceed with the improvement. In that case, as shown by the opinion, no resolution was passed ordering the improvement. No attempt was made to file a diagram or estimate, and the notice given was defective. Under § 10 of the statute, *supra*, the report is required to be submitted to the council, and the improvement, if ordered, must be ordered thereafter by ordinance. In that case, there was not only no resolution or notice, as required by the charter, but there was no attempt to file a diagram or estimate. In this case there is no question raised relative to the sufficiency of the resolution and ordinance, and there was an attempt on the part of the city engineer to report the data required. To hold that this case is ruled by the *Buckley* case would be to extend the doctrine of that case. This, we think, should not be done. In *Kelker*

*v. New Whatcom,* 16 Wash. 178, 47 Pac. 505, while the *Buckley* case was not then applicable, it was said:

"But while we would not extend the doctrine announced in that case as against a municipal corporation, we do not think that that case is applicable to the one at bar."

III.    Can a city, under a statute which requires competitive bidding as a prerequisite to a contract for a street improvement, legally contract for street pavement which involves the use of a patented article? Section 59 (*3* Rem. & Bal. Code, § 7892-59), of the local improvement law provides:

"All local improvements, the funds for the making of which are derived in whole or in part from assessments upon property specially benefited, shall be made either by the city or town itself, or by contract upon competitive bids.    .    .    . The city or town shall have power to reject any and all bids."

This statute, by its terms, does not forbid the use of a patented article. Its purpose was to secure economy and honesty in the letting of contracts for local improvements, and to prevent fraud and collusion. *In re Petition of Anthony Dugro,* 50 N. Y. 513; *Saunders v. Iowa City,* 134 Iowa 132, 111 N. W. 529, 9 L. R. A. (N. S.) 392.

The authorities construing similar statutes may be divided into three classes: (a) Where the contract is for a patented article, and the owner of the patent has filed no agreement with the city agreeing to furnish the article to the city or any successful bidder, there is a conflict in the adjudicated cases. As a type of the cases denying the right of the city to make such a contract, may be cited: *Dean v. Charlton,* 23 Wis. 590, 99 Am. Dec. 205; *Fineran v. Central Bitulithic Pav. Co.,* 116 Ky. 495, 76 S. W. 415. As representative of the decisions taking the contrary view, reference may be made to *Hobart v. Detroit,* 17 Mich. 245; *In re Petition of Anthony Dugro, supra.* (b) Where the contract is for a patented article, or involves the use of a patented article, and an agreement by the owner of the patent is filed

with the city, in which it is stipulated that the article will be furnished to any successful bidder *who may be equipped* with the necessary appliances for laying the pavement, the authorities are likewise in conflict.    The right reserved to the owner of the patent to determine who might be properly equipped for laying the pavement, being in effect the reservation of the power to determine to whom the contract might be let.    And (c) where, as in the present case, the owner of the patent has stipulated with the city that the patented article will be furnished to the successful bidder, without a reservation, the authorities uphold the right to make the contract.    *Saunders v. Iowa City, supra; Lacoste v. New Orleans,* 119 La. 469, 44 South. 267; *Tousey v. Indianapolis,* 175 Ind. 295, 94 N. E. 225; *Reed v. Rockliff-Gibson Const. Co.,* 25 Okl. 633, 107 Pac. 168, 138 Am. St. 937; *Ford v. Great Falls,* 46 Mont. 292, 127 Pac. 1004; *McEwen v. Coeur d'Alene,* 23 Idaho 746, 132 Pac. 308; *Johns v. Pendleton,* 66 Ore. 182, 133 Pac. 817, 134 Pac. 312.

These cases are comparatively recent and are directly in point.    With the exception of the *Reed* case, which involves a contract for what is known as Hassam paving, every one of them sustained a contract for Bitulithic paving under a license agreement filed with the city in identically the same terms as that which was filed with the city of Leavenworth. The reason underlying these decisions may be best presented by quoting an excerpt from *Saunders v. Iowa City, supra.* It is there said:

"What is meant by this statute is that there must be competition where competition is possible.    This is the construction usually given to statutes which are not prohibitive in character.    If the material, or part of it, is monopolized by patents, there cannot, of course, be absolutely free competition, and where that is impossible, it surely was not the intent of the legislature that all improvements should cease, or that antiquated methods only should be adopted.    All that the law means, as we view it, is that in all cases where competition may exist, such competition shall be allowed by receiving

bids, and in the absence of express prohibition there is nothing to warrant the exclusion of patented articles. The provision as to bidding regulates the exercise of a power and was manifestly not intended to limit it. And neither the public nor the parties benefited by the improvement should be deprived of the best and most approved pavements because full effect cannot be given to an act passed to regulate the exercise of a power expressly granted by other statutes. In other words, the provision as to competitive bidding has reference only to those cases where there may be competitive bidding and not to cases where some of the articles which enter into the work may be in the hands of particular individuals. Courts have never willingly blocked the wheels of progress. They should, and have at all times sought to, encourage and stimulate endeavor and to foster individual initiative, and while a great conservative force in government they do not consciously stand in the way of either mental or material advancement. The statute providing for letting a work of public improvement to the lowest responsible bidder was enacted to secure competition, to prevent fraud and defeat graft. It was enacted to remove as far as possible all favoritism and to secure the performance of public work at the lowest possible price; but it was not intended thereby to impose upon individuals the use of an article simply because it was old, nor thrust upon the people something that was inferior and antiquated simply because there might be competition as to that, but not in a newer and superior article. The statute does not say that no contract shall be let if there be but one bid, not that a bid shall be rejected because it includes the use of a patented article. This result is claimed by construction. An elementary rule in the construction of statutes is that they shall be given a reasonable and not an arbitrary interpretation. When this is done, but one result, as we think, can be reached. This is an age of improvement and of progress, and courts should do nothing which will deny municipalities the right to use the most modern methods and improvements unless it is clear that the legislature so intended."

In Elliott on Roads and Streets (3d ed.), vol. 2, § 711, it is said:

"It would seem that if there is all the competition that is possible in the nature of the case, the statute should be deemed

to be satisfied, as the legislature could not have intended an impossibility nor an absolute prohibition. Both reason and the weight of authority, therefore, support the doctrine that if the patentee relinquishes his exclusive right to the city for the use of any and all bidders who may obtain the contract, or agrees in advance that the successful bidder shall have the right to use the same, at a certain fixed royalty or reasonable price, and bidders are so notified and placed as near as may be upon an equal footing, the statute as to competitive bidding is satisfied.  .  .  . "

It is claimed, however, that the case of *Siegel v. Chicago,* 223 Ill. 428, 79 N. E. 280, sustains the opposite view. There was a stipulation there filed with the city by the Warren Bros. Company, in which the company offered to furnish to any contractor bidding on the work the Bitulithic pavement. The court, however, construed the ordinance requiring the Bitulithic wearing surface to in effect restrict the right of bidding to the Warren Bros. Company, or such persons, firms or corporations as that company might choose to deal with. The decision in that case follows the rule laid down in *Dean v. Charlton, supra,* and other like cases. It fails to recognize the distinction which exists where the owner of the patented article has filed an agreement to furnish the article to any bidder, and where the contract is sought to be let for a patented article without any stipulation on the part of the owner thereof to supply it to the successful bidder.

The license agreement in the present case is attacked, however, because of a provision therein that it should apply only to contracts aggregating not less than 10,000 square yards, and the contract in this case being for only 6,650 square yards. A sufficient answer to this contention is that the various bidders submitted their bids apparently relying upon the license agreement. After the contract for the improvement had been awarded to the successful bidder, the Warren Bros. Company supplied the article, and the pavement was constructed. No question appears to have been

raised relative to this provision of the contract until the objections to the confirmation of the assessment roll were filed.

The cases cited supporting the right of the city council to make the contract are sought to be distinguished, because it is claimed that the statutory or charter provisions there construed are not the same as the statute of this state, which requires competitive bidding. It is true that in none of the cases did the statute in terms specify "competitive bidding." Such terms as "lowest bidder," to the "lowest and best bidder," and to the "lowest responsible bidder" had been made use of. In construing these statutes and charter provisions, however, they were treated by the courts rendering the decisions as requiring competitive bidding. In a number of the decisions the terms "competitive bidding," "lowest bidder," and "lowest and best bidder" are used interchangeably. To attempt to make a distinction between a statute which requires "competitive bidding" and those which use the terms "lowest bidder," "lowest and best bidder," or "lowest responsible bidder," would be to draw a very fine line.

The judgment will be affirmed.

CROW, C. J., ELLIS, CHADWICK, and GOSE, JJ., concur.