[No. 13098.  *En Banc.*  April 1, 1916.]

THE STATE OF WASHINGTON, *on the Relation of Washington Paving Company, Plaintiff*, v. C. W. CLAUSEN, *as State Auditor, et al., Respondents.*[1]

HIGHWAYS—CONSTRUCTION WORK—COMPETITIVE BIDDING. A contract for highway work, required by 3 Rem. & Bal. Code, § 5879-9, to be let upon competitive bidding to the lowest responsible bidder, is not void, but only voidable, for the fraud of the owner of a patented process in making a secret contract with the successful bidder reducing to him the price of the patented process, which the call for bids required to be furnished at the same price to all bidders.

ESTOPPEL—IN PAIS—AGAINST STATE. The state is estopped to question the validity of a contract for highway work where it accepted the benefits and allowed the contractor to complete performance after knowledge that the successful bidder had obtained a fraudulent advantage over other bidders by means of a secret agreement with the owners of a patented process.

MORRIS, C. J., MAIN, FULLERTON, and ELLIS, JJ., dissent.

Application filed in the supreme court September 27, 1915, for a writ of mandamus to compel the state highway commis-

[1]Reported in 156 Pac. 554.

sioner to certify his acceptance of work done under a con-
tract for the construction of a highway, and to compel the
state auditor to draw a warrant in payment thereof. Writ
granted.

*Charles O. Bates* and *Hayden, Langhorne & Metzger*
(*William H. Pratt* and *J. M. Head*, of counsel), for relator.

*The Attorney General* and *Howard Waterman, Assistant*
(*John A. Shackleford* and *Glenn Fairbrook*, of counsel), for
respondents.

BAUSMAN, J.—This is an original proceeding in mandamus
to compel payment for a highway built under a contract
let by Pierce county pursuant to 3 Rem. & Bal. Code,
§ 5879-1 *et seq.* The plans and specifications, approved by
the state highway commissioner, provided that the paving be
one of twelve kinds, on all of which bids being called for and
various received, the relator became successful with one called
bitulithic. Having long ago completed its work without
payments, it alleges that the state highway commissioner ac-
tually, though not formally, accepted the work, has no just
objections, and unreasonably withholds his certificate. Testi-
mony on both sides is before us on an order of reference. The
*Attorney General*, for the defendant officials, urged fraud in
the original bid and defects in the work.

As to the first. Even before the contract was executed, one
Warter, a taxpayer, commenced in Pierce county an action
to enjoin the county commissioners from entering into it, al-
leging that the relator was getting it by fraudulently con-
cealing a secret price from the patentees that gave him an
advantage over other bidders. That action was dismissed
without prejudice after a hearing.

Upon this dismissal the commissioners executed the con-
tract and the relator immediately went forward with it.
Nevertheless, another taxpayer, one Reynolds, of Pierce coun-
ty, brought, a month after Warter's dismissal, an action in

Thurston county on similar allegations against this relator, the Pierce county commissioners, the state highway commissioner, and the state auditor, to prevent payment by the state. The highway commissioner and the auditor appearing through the *Attorney General,* a preliminary injunction was granted, only to be soon rendered nugatory by this court in *State ex rel. Pierce County v. Superior Court,* 86 Wash. 685, 151 Pac. 108, a proceeding in prohibition by the present relator. In that case we held that it was for the *Attorney General* and not for taxpayers to enjoin misappropriations of state funds. In the argument here the *Attorney General,* appearing only as *amicus curiae,* asserted the right of the taxpayer to sue.

By the Warter suit alone the alleged fraud had been noised about before the contract was so much as let and work begun; nor, under the statutory relations between the state and county officials in this work, can it be pretended that the former were less apprised than the latter. Before this work was begun, therefore, a taxpayer had failed, and the state had not used its opportunity, to prevent it.

We have repeatedly held that, in its business relations with individuals, the state must not expect more favorable treatment than is fair between men. *State ex rel. Gillette v. Clausen,* 44 Wash. 437, 87 Pac. 498; *Spokane Street R. Co. v. Spokane Falls,* 6 Wash. 521, 33 Pac. 1072; *State ex rel. Maddaugh v. Ritter,* 74 Wash. 649, 134 Pac. 492; *Ettor v. Tacoma,* 77 Wash. 267, 137 Pac. 820. The state, in its dealings with individuals, should be held to "resolute good faith." *State v. Milk,* 11 Fed. 389.

We have not to do here with the question of limitation of actions or with laches, but with estoppel *in pais;* and even where the government may not be barred by mere laches, it may be estopped *in pais* by such actions with individuals as make it a "question of honest dealing." Gilbert, Circuit Judge, in *United States v. Willamette Valley etc. Co.,* 54 Fed. 807, 811. Here we have the state in business relations. Would

an individual be allowed to keep on receiving goods under a written contract in which, before any were delivered, he knew that he had been swindled in the price and yet make no complaint until all were in his warehouse? This, in effect, is what the state is doing here. It daily received labor and materials from this contractor, waited until the work was completed, and then put itself in a position where, knowing the contractor cannot take out and sell these things again, it can dispute his claim. This is not a case of estoppel claimed by mere inaction of public officers. It is a case of their acting. Daily did those officials not only permit the delivery of labor and material on the public property, but see to it that it was laid to suit them. The state, on its present argument, was holding this contractor at a merciless disadvantage. By the agreement he was compelled to finish this work in a comparatively short time. Should he pause to see whether the state would attack the contract? He would then lose time which, if the state chose not to object, would be set up against him.

As in *Ettor v. Tacoma, supra,* we are of opinion that the state is estopped. But shall the contractor be relegated to *quantum meruit* or enjoy the contract itself? We sustain him in the latter. As for the fraud, it is not necessary in this case to pass upon that or upon the status of a bid on patented process unaffected by waiver or estoppel.

This contract was not void. Without reviewing a mass of authorities, often inharmonious and often perplexing through a loose application of the word void to acts not *ultra vires,* we are clear that this was only a voidable contract subject to ratification. There was no such impairment or exclusion of competition as to render this bargain absolutely void. To begin with, the board was competent to contract for this road. What it was buying was not something forbidden or outside of its powers. Now, no fraud being alleged against the board itself, we must assume that, when it invited bids for twelve kinds of pavement, one kind was as acceptable as another and any might have been chosen. Competitive bidding

there was.   Nobody claims that the board was using the other eleven kinds as a blind with secret arrangement to deal only on bitulithic.   It was, then, honestly proceeding in the second step of competent authority.   This is not a case of wholly leaving out an indispensable step or condition precedent, as in *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226, 114 Pac. 457, where the commissioners let a bridge contract without bid whatever.   Between fraud in the call and fraud in the bid, we must distinguish.   The secret fraud of the bidder had not impaired the statutory machinery of contract, and his fraud, if any, was one which could be waived.   When my vendor cheats me in the contract price or quality, I may waive that when I discover it and decide that the bargain is still a good one, accept or retain the goods, and ratify the thing.   On such grounds, contracts are merely voidable.

To hold this contract absolutely void we should have to say so on the call itself and pronounce the proceedings actually or substantially *ultra vires*.   Is the including an invitation to one patented process to vitiate a call that includes fifty kinds not patented, because on the one competition is less free?   In *Great Northern R. Co. v. Leavenworth*, 81 Wash. 511, 142 Pac. 1155, we did not find it necessary to decide this, for there the patentee filed consent to make the process available to any successful bidder, and on the bare proposition there is great discord of authority.   But whether or not a call on one alone is bad without the patentee's proffer, we are clear that, when the call in good faith includes other kinds, there is not that utter absence of legality which is called void.   As a test, nobody would quickly say that the contractor here, after getting the award, could have repudiated it as binding on no one, *ultra vires*, and something on which his sureties would not have to respond. ˙ It would be going excessively far to say that this contract could not even be ratified by the state if actually a profitable one.

We do not say that, to be void, a contract must be either a forbidden one in terms or one plainly beyond a public body's

functions, for even within its jurisdiction, it may leave out some step so plainly essential and precedent to an exercise of its powers that one may say that the very persons who dealt with it knew that what they were doing was wrong. The exact line we do not purpose to draw. That is best left to instance and degree. It is enough to pronounce this contract at most but voidable.

As to the second ground, it is palpable from the record that the faults in the performance now discussed are so small as to be almost within the rule of *de minimis*. The state highway commissioner, for his part, gives no testimony against that performance. His first assistant is called instead. That officer admits that his superior had said that he had no objection to the work, which he would accept were it not for the pendency of the Thurston county injunction. Now that was soon held to be without jurisdiction. Nor can this assistant point out any defects that strike us as amounting to just complaints. He concedes, too, that to the county engineer had been left the inspection and that that engineer was satisfied. No good reason does he give why the few things he points out today were not immediately complained of that the relator might remedy them. Indeed, much that is now drawn into this controversy has to do with whether the original specifications were what they should have been, a question surely settled by the parties in their contract.

In the most gigantic contracts between private parties the courts have never hesitated to say that the certificate of an architect or engineer was earned and would be considered as delivered when in truth it ought to have been delivered and was withheld with no good reason. There is no sound authority against applying that doctrine to municipal construction contracts. *County of Cook v. Harms*, 108 Ill. 151; *Slaughter v. State ex rel. Mitchell*, 132 Ind. 465, 31 N. E. 1112.

To conclude, in *State ex rel. Brown v. McQuade*, 36 Wash. 579, 79 Pac. 207, we held that, mandamus being in this state a civil proceeding, if from all the facts it clearly appears

that a relator would prevail in an ordinary suit after mandate to a public official, such as the highway commissioner, to act and either refuse or give his acceptance, this court would act directly upon the public official and require payment, rather than perhaps drive the relator to another suit that would be only a form expensive to both parties after acceptance refused upon mandate to act. In the present proceeding, we are convinced that the relator's right to the highway commissioner's certificate is perfectly maintained, that he is entitled to it now, and to payment by the state in due course.

Let the writ issue, requiring payment by the respondent state auditor of whatever shall be found due upon this contract as one accepted and approved in all legal respects by the respondent highway commissioner.

MOUNT, PARKER, and HOLCOMB, JJ., concur.

CHADWICK, J. (concurring)—It is within the powers of the public authorities to let contracts for public improvements. The contract let in this case was, therefore, voidable and not void.

The state, by its conduct, is estopped to deny the obligation of its contract after having notice of the things now set up against it.

I do not want to be understood as indorsing or giving a judicial approval to the manner in which the contract was let in this case. Had the case referred to as the "Warter case" come to this court, I would have concurred in an opinion holding that the contract should not be entered into by the commissioners.

Wherefore, upon the ground of estoppel, I concur in the opinion of the court.

MAIN, J. (dissenting)—The basic error in the majority opinion is in the holding that the contract in question is voidable only, and not void. The statute, 3 Rem. & Bal. Code, § 5879-9, requires that such a contract shall be awarded to

the "lowest responsible bidder;" and saves the right to the board to reject any and all bids. A statute which requires that a contract shall be awarded to the "lowest responsible bidder" is equivalent in meaning to a statute which requires "competitive bidding." *Great Northern R. Co. v. Leavenworth*, 81 Wash. 511, 142 Pac. 1155.

Where a statute requires that contracts for public work shall be let upon competitive bidding, or to the lowest responsible bidder, any secret fraud practiced on the part of the successful bidder or bidders which tends to avoid the competitive requirement of the statute, renders the contract void, not voidable.

In 6 R. C. L. 813, it is said:

"Though there are English and Canadian decisions to the contrary, the rule is settled in the United States that agreements which, in their necessary operation upon the action of contractors bidding for public work, tend to restrain the natural rivalry and competition of the parties, and thus produce a result disadvantageous to the public, are against public policy, and void."

See, also, 2 Dillon, Municipal Corporations (5th ed.), § 781; Editor's note to the case of *Citizens' Nat. Bank of Chickasha v. Mitchell*, 20 Am. & Eng. Ann. Cas. 386.

The fact that a good road may have been constructed under the contract in question, and that the relator was the only person equipped to properly perform the contract, if such are the facts, have no bearing on the question. Contracts awarded in defiance of the statutory provision requiring competitive bidding are illegal in their nature and tendency, and for that reason no inquiry is necessary as to the particular effect of any one contract, because it would not alter the general nature of the contract, or the force of public policy which condemns them.

In *Conway v. Garden City Paving & Post Co.*, 190 Ill. 89, 60 N. E. 82, it is said, speaking with reference to such contracts:

"The test of illegality is not the result in a particular case, but the tendency of the contract if recognized as valid in the law."

In *McMullen v. Hoffman*, 174 U. S. 639, with reference to the same question, it was said:

"Contracts of the nature of this one are illegal in their nature and tendency, and for that reason no inquiry is necessary as to the particular effect of any one contract, because it would not alter the general nature of contracts of this description or the force of public policy which condemns them."

The contract, being void, cannot be made the basis of an action. The contractor's only remedy is for the reasonable value of the work done and the materials furnished. In other words, the remedy is not upon the contract, but upon a *quantum meruit*. *Green v. Okanogan County*, 60 Wash. 309, 111 Pac. 226, 114 Pac. 457.

In this case, in the proposal for bids, one kind of paving specified was "Bitulithic surface material," which was a patented article. The specifications required the patentee to furnish this material to any successful bidder at a definite reasonable price per square yard. The patentee was required to file with the board what is known as a license agreement or statement that it would furnish such patented material to any successful bidder at the price named. This license agreement or statement was filed, and provided that the Bitulithic surface paving mixture would be furnished to any contractor at ninety cents per square yard. The patentee, at the time, had a secret agreement with the relator whereby it could acquire the Bitulithic paving mixture at a cost to it of approximately thirty-eight cents less per square yard than other contractors would be required to pay under the license agreement filed with the board. It requires no argument to show that, under the secret agreement with the patentee, the relator had a material and substantial advantage over any other contractor that might desire to bid upon that particular kind

of paving. The secret agreement which the relator had with the patentee was destructive of the competitive feature required by the statute, and rendered the contract awarded in pursuance thereof absolutely void.

The fact that a number of other kinds of pavement were called for in the proposal, and bid upon, does not alter the situation. The bitulithic pavement being a patented article, may be used under a statute which requires competitive bidding, provided it can be acquired at a reasonable price, and is bid upon in such a way that it will be subject to the greatest amount of competition which is possible. This is the doctrine of the case of *Great Northern R. Co. v. Leavenworth*, 81 Wash. 511, 142 Pac. 1155. In that case it was held that the bid upon Bitulithic paving, where the license agreement had been filed agreeing to furnish the article to any successful bidder at a reasonable price named, satisfied the statute as to the requirement for competitive bidding. But so far as the record shows, at least, the successful bidder in that case did not have a secret agreement which provided for a price different or less than that specified in the license agreement filed, and to which all bidders had access.

In my opinion, the method adopted to secure the contract in question was unfair to other bidders, injurious to the public, indefensible in morals, and renders the contract illegal and void in law. · For the reasons stated, I am unable to concur in the majority opinion, and therefore dissent.

MORRIS, C. J., concurs with MAIN, J.

FULLERTON, J. (dissenting)—I concur with Judge Main in the conclusion that the contract between the county commissioners and the relator is void. But if the rule be that the contract is voidable only, as held by the majority, I cannot concur in the conclusion that the state is estopped from questioning it. The facts showing the contract to be voidable developed upon the trial of the suits brought by the individuals to restrain the payments. This was the first knowledge

the officers of the state had of the fraud, and from that time
on they have acted consistently by refusing to recognize any
right of the contractor to payment in virtue of the contract.
In my opinion, the majority are in error on each of the ques-
tions determined.

ELLIS, J. (dissenting)—An examination of the authorities
cited by Judge Main convinces me that the contract here in
question should be held void.   The fact that it is not void as
*ultra vires* of the state to make under any circumstances,
seems to me foreign to the issue.   Neither was the contract
involved in *Green v. Okanogan County*, 60 Wash. 309, 111
Pac. 226, 114 Pac. 457.   It is void for the same reason that
the contract in the *Green* case was void, namely, because there
was no chance for real competitive bidding on the character
of pavement for which the contract was let, and hence it con-
travened public policy as declared by our statute.   But the
state has received and retains the benefit of the work and ma-
terial and should pay reasonable value therefor.   In such a
case, the doctrine of estoppel goes no further.   On the au-
thority of *Green v. Okanogan County, supra*, the contractor
should be remitted to his recovery on a *quantum meruit*.   This
meets every consideration of "honest dealing," whether by
men, municipalities or the state.

I concur with Judge Main.